UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JHON JAIRO ARANGO,               )
                Petitioner       )
                                 )
v.                               )      Civil Action
                                 )      No. 08-11162-RCL
UNITED STATES OF AMERICA,        )
                Respondent       )

Young, D.J.                                    June 16, 2009

MEMORANDUM AND ORDER

## I. INTRODUCTION

Jhon Jairo Arango ("petitioner" or "Arango") petitions for

resentencing pursuant to 28 U.S.C. § 2255 ("Section 2255 ") on

the ground that his counsel was ineffective.  Arango is serving a

term of imprisonment of 262 months, imposed by Judge Reginald C.

Lindsay after Arango entered a plea of guilty to one count of

conspiracy to possess cocaine with intent to distribute, 21

U.S.C. § 846, one count of conspiracy to commit money laundering,

18 U.S.C. § 1956(h), and one count of possession with intent to

distribute and distribution of cocaine, 21 U.S.C. § 841(a)(1),

and aiding and abetting, 18 U.S.C. § 2.

## II. FACTS & PROCEDURAL HISTORY

### A.  Arango's 14-Day Evidentiary Hearing and the Court's Factual Findings

On August 25, 2004, a federal grand jury returned a fourth

1

superseding indictment against Arango,[1] charging him with the crimes set forth above. On March 21, 2005, Arango changed his plea to guilty to all the counts listed against him in the indictment.   United States v. Arango, 508 F.3d 34, 36 (1st Cir. 2007). Because Arango contested the amount of drugs and money involved attributable to him, however, Judge Lindsay held a 14-day evidentiary hearing to make factual determinations regarding the petitioner's contentions.   Id.[2]

After the conclusion of the 14-day evidentiary hearing, Judge Lindsay found[3] the petitioner responsible for "at least" 67

---

[1] Arango was charged with co-defendant Dario Osorio Norena ("Norena"). (Fourth Superseding Indictment, Doc. No. 602.)

[2] It is important to note that this sentencing took place post-United States v. Booker, 543 U.S. 220 (2005), but pre-Gall v. United States, 552 U.S. 38 (2007), and Kimbrough v. United States, 552 U.S. 85 (2007), when the status of the United States Sentencing Guidelines was in flux. Judge Lindsay's meticulous regard for Arango's rights and his willingness to extend to him procedural protections which were (and are) not required by Supreme Court precedent, but see United States v. Kandirakis, 441 F. Supp. 2d 282, 320 (D. Mass. 2006), at a time when district judges were adjured simply to rely on pre-sentence reports as a substitute for rigorous (and genuine) fact finding, see Booker, 543 U.S. at 255-57, speaks volumes about this magnificent judge. See generally William G. Young, A Lament for What Was Once and Yet Can Be, 32 B.C. Int'l & Comp. L. Rev. 305, 313 (2009) (decrying the diminished role fact finding plays in federal courts today).

[3] Judge Lindsay made the findings using the preponderance of the evidence standard. Arango, 508 F.3d at 39. He did, however, make the statement that he would find no problem making these findings beyond a reasonable doubt. Id. Compare this with the miscarriage of justice perpetrated by this Court when it sentenced based only on a preponderance of the evidence standard, a mistake it will not make again. See United States v. Griffin,

kilograms, consisting of 60 kilograms that Liliana Cruz ("Cruz"), a cooperating government witness, retrieved on two trips to Queens, New York, and seven kilograms of cocaine that she received from Alonso Tavarez ("Tavarez"), a participant in the cocaine trafficking ring. Id. at 39. Thus, Arango was held responsible for 67 kilograms of cocaine. Id. Additionally, Judge Lindsay found that Arango was responsible for $1,800,000 in money laundering proceeds.[4] Id.

## B.  Arango's Sentencin g

The sentencing hearing was held on January 30, 2006. (Sentencing Tr. 1, Doc. No. 685.)[5] The probation office ("probation") in its Presentence Report advised a total offense

---

494 F. Supp. 2d 1 (D. Mass. 2007), vacated, 524 F.3d 71 (1st Cir. 2008), remanded to 566 F. Supp. 2d 59 (D. Mass. 2008), aff'd, No. 08-2000 (1st Cir. Jan. 8, 2009).

[4]  Judge Lindsay "arrived at the money laundering figure by adding together $500,000 and $600,000 that Cruz testified she retrieved from New York at defendants' request in the spring of 2000, plus the roughly $700,000 that was delivered to her in small amounts by the Cataño brothers and Tavarez." Arango, 508 F.3d at 39. Judge Lindsay later discovered that the government's amount of $1,800,000 was off about a half million dollars, but declined to correct the error, noting that it would not affect the Guidelines sentencing range. Id.

[5]  Although Arango's Section 2255 petition has been assigned its own docket number in this Court, 08-11162, all of the documents filed in support and opposition of his petition were, pursuant to an order of the Court, filed under the case number for Arango's criminal prosecution, Arango v. United States, 00-10224 (D. Mass). Thus all the documents and docket entries cited to in this Order have been exclusively filed and are located in the file for 00-10224.

3

level of 41 for Arango. (Id. at 7.) The petitioner's counsel at
sentencing, Michael Zemen ("Zemen") argued for a three-level
reduction for his client, arguing the government's difficulty in
being able to prove it was his client's voice on the tapes and
asserting that his client timely notified the government of his
change of plea. (Id. at 9-10.) The government argued that it
had invested a substantial amount of time in preparation by the
time Zemen notified Assistant United States Attorney Hamilton
("Hamilton") of his client's intention to plead guilty, by
translating tapes and going through the voice exemplar process.
Therefore, it argued, Arango was not entitled to a third-level
reduction. (Id. at 22, 24.) Judge Lindsay granted Arango a two-
level reduction bringing his offense level down to 39. Arango,
508 F.3d at 39. As Arango was in criminal history category I,
defense counsel made no objection to Judge Lindsay's calculation.
(Sentencing Tr. 28.) The resultant advisory guideline range was
262 to 327 months, and included five years of supervised release
because of the mandatory minimum term and a guideline fine of
$25,000 to $11,600,000, as well as a $100 special assessment on
each of the counts. (Id. at 34.)

The government recommended a 262 month period of
incarceration, five years of supervised release, a $2,000,000
fine, and a special assessment of $300. (Id. at 35.) The
government also asked the Court to impose a special condition

4

upon Arango's release if he was deported from this country,
forbidding him to re-enter the United States without the express
written permission of the Department of Homeland Security.  (Id.)
Defense counsel recommended the lower end of the range, 262
months, arguing that the petitioner was working within the drug
distribution ring on credit, and because the money was seized, he
actually owed money to the person above him in the drug ring.
(Id. at 36.)  Zemen also informed the Court that his client
himself had actually been kidnapped at gunpoint, as stated by
Cruz during testimony, and he was certainly not what one would
call a drug king.  (Id.)  Zemen also asked the court indicate to
the Bureau of Prisons that his client was actually in Columbia on
April 7, 2002, in regards to this matter, and was taken into
custody after the extradition proceedings by the Drug Enforcement
Agency on February 26, 2003, so that his client could receive
credit for time already served.  (Id. at 37.)  Additionally, the
petitioner addressed the court, stating that he was never
responsible for giving Cruz orders and was not her boss.  (Id. at
39.)  The petitioner maintained that he simply earned a
commission on the sale of drugs.  (Id.)

    The government responded to the petitioner's allocution with
a discussion comparing a guideline sentence to a non-guideline
sentence, addressing the section 3553(a) factors.  (Id. at 39.)
The government argued that a sentence within the guideline range

                               5

was presumptively reasonable, particularly in the context of Arango's case. (Id. at 40.) It argued that the Court had found that Arango was a leader of a cocaine trafficking and money laundering ring. (Id. at 41.) The government further argued that the fact that there were 14 co-defendants for Camilo Aguirre[6] alone demonstrated how widespread was the ring, and the tapes produced by the government during the evidentiary hearing demonstrated how dangerous it was. (Id.) The government contended that the fact that Arango managed to direct narcotics activities and money laundering activities from the relative comfort of his base in Columbia spoke to his history, characteristics, and dangerousness. (Id. at 42.) The government concluded by arguing that, in this case, a guideline range sentence would serve as a deterrent to Arango and others who might consider engaging in international narcotics trafficking in that a long sentence would send the message that if individuals wished to engage in such activities and were discovered by the United States, they would be extradited to the United States and would face a very long prison term. (Id. at 44-45.)

Judge Lindsay then asked both the government and defense counsel if there was any reason why the court should not impose sentence on Arango. (Id. at 45.) Both parties replied in the

---

[6] Camilo Aguirre is an individual who was also charged with conspiracy of possession of cocaine with intent to distribute in this drug trafficking ring. (Doc. No. 1.)

negative. (Id.) The court imposed a sentence of 262 months in total on the petitioner, with 262 months on Counts one and three, and 240 months on Count two, all to be served concurrently; a period of five years of supervised release on Counts one and three, and three years on Count two, all to be served concurrently; a fine of $2,000,000; and a special assessment of $300. (Id. at 45-46, 49.) Judge Lindsay also stated that the Court would inform the Bureau of Prisons that the petitioner had been arrested in Columbia on April 7, 2002, and was detained pending extradition up until February 26, 2003, and make a recommendation, if necessary, that the time be credited toward his sentence. (Id. at 46-47) The Court also informed the petitioner of his right to appeal. (Id. at 51.)

## C. Arango's Appeal

The petitioner filed a timely notice of appeal to the United States Court of Appeals for the First Circuit. As grounds for appeal, the petitioner asserted that Judge Lindsay had failed to state the reasons for his sentence in open court, in alleged violation of 18 U.S.C. § 3553(a) and had erred in not granting the petitioner the third-level reduction. Arango, 508 F.3d at 36. The First Circuit disagreed, holding that the "Guidelines are clear that a three-level reduction is warranted only where the defendants' acceptance of responsibility occurs early in the pre-trial preparation period," and that the government had

7

already invested a significant amount of resources in preparation for trial. Id. at 41.

Additionally, the First Circuit noted that although "no contemporaneous explanation [was given] at all for Arango's sentence . . . 'silence is not necessarily fatal'; 'a court's reasoning can often be inferred by comparing what was argued by the parties or contained in the presentence report with what the judge did." Id., 508 F.3d at 46 (quoting United States v. Turbides-Leonardo, 468 F.3d 34, 40-41 (1st Cir. 2006) (quoting United States v. Jimenez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006))). Furthermore, the First Circuit held that as (1) Arango did not challenge the reasonableness of his sentence, (2) the sentence imposed was the sentence requested by his counsel, (3) the district court engaged in considerable deliberation, and (4) the district court explained in detail its use of the miscalculation of the amount of money actually laundered, the district court's explanation was sufficient. Id. at 46-48.

Arango's judgment of conviction and sentence was affirmed on November 15, 2007. The petitioner filed a petition for writ of certiorari to the United States Supreme Court, which was denied on April 14, 2008. Thus, the judgment of conviction became final April 14, 2008. The instant petition was filed June 24, 2008. Therefore this petition satisfies the applicable one-year statute of limitations. See 28 U.S.C. § 2255(f)(1) (explaining

relevantly that "[a] 1-year period of limitation shall apply to a motion under this section . . . run[ning] from the . . . date on which the judgement of conviction becomes final").

## III. ANALYSIS

### A. Standard of Review

The petitioner brings his petition under 28 U.S.C. § 2255, alleging violation of his constitutionally protected rights. Pursuant to Section 2255, the sentencing court is authorized to discharge or resentence a defendant if it concludes that the sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The court shall grant an evidentiary hearing upon such petitions "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[7] Mack v. United States, 635

---

[7]     Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the

9

F.2d 20, 26 (1st Cir. 1980) (quoting Rule 4(b), Rules Governing
Section 2255 Proceedings). The petitioner need not satisfy any
exhaustion requirements before filing a Section 2255 petition.
Pratt v. United States, 129 F.3d 54, 60 (1st Cir. 1997). A
petitioner may, however, be procedurally barred from filing such
a petition if: (1) he has failed to raise the claims he now
raises in his Section 2255 petition on direct appeal, and he
could have done so, Reed v. Farley, 512 U.S. 339, 354 (1994), or
(2) he files a Section 2255 motion during the pendency of an
appeal, United States v. Gordon, 634 F.2d 638, 638 (1st Cir.
1980).

    The petitioner bears the burden of demonstrating by a
preponderance of the evidence that he is entitled to relief,
including demonstrating entitlement to an evidentiary hearing.
United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978).
Generally though, a hearing is not required when a Section 2255
petition "(1) is inadequate on its face, or (2) although facially
adequate, is conclusively refuted as to the alleged facts by the
files and records of the case." Moran v. Hogan, 494 F.2d 1220,
1222 (1st Cir. 1974). A petitioner's allegations are accepted
"as true except to the extent they are contradicted by the

---

    judgment aside and shall discharge the prisoner or
    resentence him . . . as may appear appropriate.

28 U.S.C. §2255(b).

record, inherently incredible, or conclusions rather than statements of fact." Pocaro v. United States, 784 F.2d 38, 40 (1st Cir. 1986). Moreover, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Carey v. United States, 50 F.3d 1097, 1098 (1st Cir. 1995) (citing Rule 4(b), Rules Governing Section 2255 Proceedings).

## B. Ineffective Assistance of Counsel Claims

In his motion, Arango asserts that both his trial counsel and his appellate counsel rendered ineffective assistance, in violation of his Sixth Amendment rights. (Pet. Supp. Habeas Mot. 2, Doc. No. 749.) Arango argues that Zemen rendered ineffective assistance of counsel during the sentencing proceedings held against him. Arango maintains that Zemen's failure to object to Judge Lindsay's treatment of the Sentencing Guidelines ("Guidelines") as presumptively reasonable amounted to deficient performance in representing his client. (Id. at 4.) Additionally, Arango argues that Zemen provided deficient performance in failing to rebut the government's argument that 18 U.S.C. § 3553(a) required a Guideline sentence in this case. (Id. at 5.) Moreover, Arango argues that appellate counsel, David Silverman ("Silverman"), provided ineffective assistance by failing to raise and argue this issue before the First Circuit.

11

(Id. at 6.) The petitioner contends that Silverman pursued frivolous issues, that this "constructively den[ied] him appellate counsel," and that in this case prejudice should be presumed. (Id. at 12.)

The United States Constitution guarantees "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. It has been determined that the right to assistance of counsel is the right "to be assisted by an attorney . . . who plays the role necessary to ensure that the trial is fair." Strickland v. Washington, 466 U.S. 668, 685 (1984). "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." Id. at 685. Thus, "the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). To maintain a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel both rendered performance that fell below an objective standard of reasonableness, and that, as a result of counsel's unreasonable performance, he suffered actual prejudice. Strickland, 466 U.S. at 687. Attorney performance is measured by a standard of "reasonableness under prevailing professional norms." Id. at 688. Generally, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant

12

decisions in the exercise of reasonable professional judgment."
Id. at 690. Considering the totality of the circumstances,
counsel's conduct must be evaluated from his perspective at the
time. Id. at 689. Consequently, a court's review of counsel's
performance must be "highly deferential." Id.

In addition to proving that his attorney's performance was
deficient, a petitioner must also demonstrate that he has
suffered actual prejudice as a result of his attorney's deficient
performance. "The defendant must show that there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different." Id. at 694.
"A reasonable probability is a probability sufficient to
undermine confidence in the outcome." Id. In the context of a
guilty plea, to demonstrate prejudice the petitioner must show
that there existed a reasonable probability that "but for
counsel's errors, he would not have pleaded guilty and would have
insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59
(1985).

"[B]oth the performance and prejudice components of the
ineffectiveness inquiry are mixed questions of law and fact."
Dugas v. Coplan, 428 F.3d 317, 327 (1st Cir. 2005) (quoting
Strickland, 466 U.S. at  668 (internal quotation marks omitted)).
"If it is easier to dispose of an ineffectiveness claim on the
ground of lack of sufficient prejudice, which . . . will often be
so, that course should be followed." United States v. De La

13

Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (quoting Strickland, 466
U.S. at 697 (internal quotation marks omitted)).  Prejudice has
been held to to be presumed only in cases where "counsel was
either totally absent, or prevented from assisting the accused
during a critical stage of the proceeding."  United States v.
Cronic, 466 U.S. 648, 659 n.25 (1984).

## C. Attorney Michael Zemen Rendered Effective Assistance of Counsel During the Sentencing Proceedings

### 1. The Sentencing Court Did Not Treat the Guidelines as Presumptively Reasonable[8]

Arango alleges that Zemen's failure to object to this
Court's treatment of the sentencing guidelines as presumptively
reasonable was deficient performance, as at the time this issue
was "one of the highest sentencing issues post-Booker."  (Pet.
Supp. Habeas Mot. 5.)

This claim is meritless.  Contrary to petitioner's position,
there is nothing on the record that indicates that Judge Lindsay
treated the sentencing guidelines as presumptively reasonable.
He engaged in a lengthy 14-day evidentiary hearing to make actual

---

[8] The petitioner also asserts that his appellate counsel
provided ineffective assistance by failing to raise, on the
grounds of plain error, the claim that the Sentencing Court's
treatment of the guidelines as presumptively reasonable is
erroneous.  (Pet. Supp. Habeas Mot. 7.)  The petitioner continues
that "it was the industry norm for a defense counsel to argue
against presumption post-Booker."  (Id. at 13.)  Again, the
merits of this claim need not be addressed.  As he makes the same
allegations against sentencing counsel and his claim fails under
that analysis, his claim against appellate counsel also fails as
Arango fails to show how the district court treated the
sentencing guidelines as presumptively reasonable.

14

factual determinations regarding drug quantity and amounts of money attributable to the petitioner. He allowed the petitioner's counsel to argue on his client's behalf during sentencing and awarded a two-level reduction on the basis of that argument. Moreover, the fact that court did <u>not</u> treat the sentencing guidelines as presumptively reasonable is evidenced by the fact that the Court imposed a <u>non-guideline</u> sentence on the petitioner's co-defendant. <u>Arango</u>, 508 F.3d at 45. Additionally, as the First Circuit noted, Judge Lindsay <u>accepted</u> both the government and defense counsel's recommendation that Arango receive a sentence at the lower end of the guideline range. When the petitioner receives the sentence asked for, he is "foreclosed from making any such claims." <u>Id.</u> at 46.

Accordingly this claim is summarily dismissed.

### B. Attorney Zemen's Alleged Failure Adequately to Interview the Petitioner and Investigate His Personal History Relevant to the Sentencing Proceedings Did Not Amount to Ineffective Assistance of Counsel

The petitioner maintains that Zemen provided ineffective assistance of counsel by failing adequately to interview him and investigate his background to present mitigating evidence. (Pet. Supp. Habeas Mot. 12.) The petitioner contends that this failure resulted in prejudice because at sentencing his counsel was unable able to provide any rebuttal to the government's argument regarding the Section 3553(a) factors. <u>Id.</u> In order for Arango to prevail on this claim, he must demonstrate that but-for Zemen's failure to rebut the government's argument he would not

15

have pleaded guilty but would have insisted on going to trial.[9]
Hill, 474 U.S. at 59.

This argument is equally specious.  First, petitioner
decided to plead guilty the Wednesday before the Monday trial was
due to begin.  His plea acknowledges that he is guilty of the
offenses as stated by the government.  Second, a 14-day
evidentiary hearing had just concluded, where the government's
evidence against the petitioner was so overwhelming that Judge
Lindsay stated that he would have no problem making the factual
determinations he did beyond a reasonable doubt.  Petitioner
points to nothing - not a scintilla of evidence - that suggests
he would have taken the case to trial (risking the three-level
reduction already awarded) simply because his counsel failed to
press a forlorn hope that a below-guideline sentence might have
been sought.  This Court is not required to indulge such remote
possibilities.

_____

    [9]  Petitioner argues that "[t]he abandonment of the issues is
akin to Arango not having any sentencing counsel, and that result
constructively denying [sic] him appellate counsel."  (Pet. Supp.
Habeas Mot. 12.)  This argument fails - Zemen did not abandon the
issues, he simply chose to focus on arguing for the 3-level
reduction rather than emphasizing the factors outlined by 18
U.S.C. § 3553(a).  Sentencing was held after an extensive
evidentiary hearing where the government's key witness spent 8
days on the witness stand.  Zemen's strategy was reasonable, as
the court already had the opportunity to hear about petitioner's
background and his involvement in narcotics trafficking and money
laundering in the United States and Columbia.

16

## IV. CONCLUSION

Based on the preceding facts and analysis of law, this
petition must be, and hereby is, DENIED.

_William G. Young_

William G. Young
District Judge